J-S69028-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AKEEM FOLLY | : | |
| | : | |
| Appellant | : | No. 2822 EDA 2018 |

Appeal from the PCRA Order Entered August 24, 2018,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0511742-2005.

BEFORE:   SHOGAN, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                **FILED FEBRUARY 14, 2020**

Akeem Folly appeals *pro se* from the order that denied his second petition filed pursuant to the Post Conviction Relief Act (PCRA).  42 Pa.C.S.A. §§ 9541-46.  We affirm.

In support of its order denying Folly's first PCRA petition, the PCRA court summarized the pertinent facts as follows:

> On July 25, 2003, at about 1:00 a.m. or 1:30 a.m., seventeen year old Edward Craig Jackson, who was known to his friends as CJ, was shot numerous times and killed by [Folly] and his co-defendant William Creighton in the 3100 block of West Norris Street as he left his girlfriend's house. A third individual named Tyrone Brown was also involved in the incident.
>
> According to Mr. Brown, who entered a guilty plea to *inter alia* a charge of murder of the third degree for the death of [CJ][,] he, [Folly] and Mr. Creighton were driving around

---

[*] Retired Senior Judge assigned to the Superior Court.

the area where the killing occurred looking for individuals to rob. At some point, [Folly] told Brown, who was driving, to pull the car over to the curb near 32nd and Berks Street. When he pulled over, both [Folly] and Creighton quickly exited the car and ran up an alley. Approximately five minutes later Brown heard several gunshots. Immediately thereafter, both [Folly] and [Creighton] returned to the car. [Folly] told Brown, "We had to shoot the 'M' Fer'".

After [Folly] and Creighton got into the car, all three men went to [Folly's] house. While there, Creighton told Brown that they shot "that boy CJ", an individual Brown did not know. In subsequent conversations, Creighton indicated that he shot [CJ] because of something that happened at school.

Brown further testified that [CJ] was shot with a .45 Caliber Glock handgun. According to Brown, he gave such a weapon to Creighton that night because he (Brown) did not want to carry it while he was driving in the event that he was pulled over by the police.

Brown was arrested in September of 2003. Incident to that arrest police siezed a .45 Caliber Glock handgun that testing revealed to be the gun that was used to kill [CJ].

Mr. Robert Spurell was another individual Creighton confided in about the killing of [CJ]. Spurell, who went to school with [Folly] and Creighton, admitted giving a statement to police wherein he stated that Creighton told him that he shot [CJ] in the presence of [Folly] because [CJ] had threatened to ask someone to get [Folly]. Spurell added that he was with Tyrone Brown in September of 2003 when Brown was arrested and found to be in possession of the murder weapon herein. Spurell indicated that he implicated both [Folly] and Creighton in the murder of [CJ] because he believed that they had implicated him in criminal activity.

Mr. Freddy Spurell, Robert Spurell's cousin, was interviewed by police twice. While he testified that what he told police in his statement was not true, in those statements he stated that Creighton told him that he shot [CJ] because of an incident at school during which [CJ] was poked in the eye and threatened to go to the police over it. Creighton indicated that he snuck up on [CJ] as [CJ] was

leaving his girlfriend's house and shot him in the face. Creighton added that when [CJ] fell to the pavement, he shot him several more times.

Freddy [Spurell], as did his cousin Robert, stated that he inculpated Creighton in [CJ's] killing because he believed that Creighton had given police information about a homicide that he had committed.

An autopsy performed on [CJ's] body showed that he was shot nine times. The bullets damaged several vital organs including [CJ's] brain, heart, lungs, liver, and one kidney.

PCRA Court Opinion, 1/15/10, at 1-4 (footnotes omitted).

Folly and Creighton were tried jointly in May of 2006. At the conclusion of the trial, the jury found Folly guilty of third-degree murder, criminal conspiracy, and possessing an instrument of crime.[1] On June 21, 2006, the trial court imposed an aggregate term of twenty to forty years of imprisonment. Folly did not file a direct appeal.

On December 20, 2007, Folly filed a *pro se* PCRA petition. The PCRA court appointed counsel, and PCRA counsel thereafter filed several amended petitions. By order entered October 22, 2009, and following Pa.R.A.P. 907 notice, the PCRA court denied the petition as untimely filed. Folly filed a timely appeal to this Court. On August 9, 2010, we affirmed the order denying post-conviction relief and, on September 11, 2011, our Supreme Court denied

_____

[1] The jury convicted Creighton of first-degree murder and related charges. Thereafter, the trial court sentenced him to a term of life in prison. **See Commonwealth v. Creighton**, 965 A.2d 291 (Pa. Super. 2008) (unpublished memorandum).

- 3 -

Folly's petition for allowance of appeal. *Commonwealth v. Folly*, 11 A.3d 71017 (Pa. Super. 2010) (unpublished memorandum), *appeal denied*, 27 A.3d 223 (Pa. 2011).

On October 24, 2011, Folly filed a second *pro se* PCRA petition. Over the next several years, Folly filed multiple amended petitions in which he claimed newly-discovered evidence in the form of affidavits from various individuals. Privately retained PCRA counsel entered his appearance on April 21, 2017. Thereafter, PCRA counsel filed an amended petition in which Folly claimed the existence of a previously unknown eyewitness to CJ's murder. The Commonwealth filed an answer, and the PCRA court held an evidentiary hearing at the conclusion of which the PCRA court denied post-conviction relief. This *pro se* timely appeal followed. The PCRA court did not require Pa.R.A.P. 1925 compliance.

Folly's *pro se* brief does not contain a statement of issues. Notwithstanding this procedural defect, it is clear that Folly is claiming the PCRA court erred by denying him post-conviction relief in the form of a new trial based upon the after-discovered evidence provided by the testimony of his witness, Alvino Ray.

This Court's standard of review regarding an order dismissing a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. *Commonwealth v. Garcia*, 23 A.3d 1059, 1061 (Pa. Super. 2011). "The PCRA court's findings

will not be disturbed unless there is no support for the findings in the certified record." ***Commonwealth v. Wah***, 42 A.3d 335, 338 (Pa. Super. 2012).

Before addressing the merits of Folly's issues, we must first determine whether Folly's second PCRA petition was timely.

The timeliness of a post-conviction petition is jurisdictional. ***Commonwealth v. Hernandez***, 79 A.3d 649, 651 (Pa. Super. 2013). Generally, a petition for relief under the PCRA, including a second or subsequent petition, must be filed within one year of the date the judgment becomes final unless the petition alleges, and the petitioner proves, that an exception to the time for filing the petition is met. The three narrow statutory exceptions to the one-year time bar are as follows: "(1) interference by government officials in the presentation of the claim; (2) newly discovered facts; and (3) an after-recognized constitutional right." ***Commonwealth v. Brandon***, 51 A.3d 231-233-34 (Pa. Super. 2012) (citing 42 Pa.C.S.A. § 9545(b)(1)(i-iii)). A PCRA petition invoking one of these statutory exceptions must "be filed within 60 days of the date the claim could have been presented." ***See Hernandez***, 79 A.3d 651-52 (citations omitted); ***see also*** 42 Pa.C.S.A. § 9545(b)(2).[2] Finally, exceptions to the PCRA's time bar must

---

[2] Our legislature recently amended this section of the PCRA to provide petitioners one year to file a petition invoking a time-bar exception. ***See*** 2018, Oct. 24, P.L. 894, No. 146, § 2, effective in 60 days [Dec. 24, 2018]. This amendment does not apply to Folly's petition since he filed it before the effective date.

be pled in the petition, and may not be raised for the first time on appeal. **Commonwealth v. Burton**, 936 A.2d 521, 525 (Pa. Super. 2007); **see also** Pa.R.A.P. 302(a) (providing that issues not raised before the lower court are waived and cannot be raised for the first time on appeal).

Here, Folly's judgment of sentence became final on July 21, 2006, thirty days after the time for filing an appeal to this Court expired. **See** 42 Pa.C.S.A. § 9545(b)(3). Therefore, Folly had until July 21, 2007, to file a timely petition. Because Folly filed his second petition in 2011, it is patently untimely unless he has satisfied his burden of pleading and proving that one of the enumerated exceptions applies. **See Hernandez**, **supra**.

Within his most recent amendment to his second PCRA petition, Folly asserted that he had established a time-bar exception. Specifically, Folly contended that, on March 1, 2017, Alvino Ray, "a heretofore unknown eyewitness to the crimes charged [had] signed an affidavit [] which states that [Folly] was not present when [CJ] was shot and killed." PCRA Petition, 4/21/17, at 2 (unnumbered). Folly averred that this witness' proposed testimony raised "newly-discovered facts" which "were unknown to him and could not have been ascertained by the exercise of due diligence." **Id.** at 3 (unnumbered). According to Folly, these "newly-discovered facts" entitled him to post-conviction relief in the form of a new trial.

With this claim, Folly attempted to establish the PCRA's timeliness exception found at section 9545(b)(1)(ii).

The timeliness exception set forth in Section 9545(b)(1)(ii) requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned of those facts earlier by the exercise of due diligence. Due diligence demands that the petitioner take reasonable steps to protect his own interests. A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. This rule is strictly enforced. Additionally, the focus of this exception is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts.

The timeliness exception set forth at Section 9545(b)(1)(ii) has often mistakenly been referred to as the "after-discovered evidence" exception. This shorthand reference was a misnomer, since the plain language of subsection (b)(1)(ii) does not require the petitioner to allege and prove a claim of "after-discovered evidence." Rather, an initial jurisdictional threshold, Section 9545(b)(1)(ii) requires a petitioner to allege and prove that there were facts unknown to him and that he exercised due diligence in discovering those facts. Once jurisdiction is established, a PCRA petitioner can present a substantive after-discovered evidence claim.

*Commonwealth v. Brown*, 111 A.3d 171, 176 (Pa. Super. 2015) (citations omitted).

Here, the PCRA court accepted PCRA counsel's argument that Folly established the Section 9545(b)(1)(ii) exception to the PCRA's time bar. Our review of the record provides no reason to disturb this conclusion. The court then heard the after-discovered evidence and denied post-conviction relief. Thus, we review the PCRA court's determination that Folly cannot establish his claim of after-discovered evidence.

To address this issue, we first note the test applied to after-discovered evidence. When discussing the test in the context of a PCRA appeal, our Supreme Court recently summarized:

> [W]e have viewed this analysis in criminal cases as comprising four distinct requirements, each of which, if unproven by the petitioner, is fatal to the request for a new trial. As stated, the four-part test requires the petitioner to demonstrate the new evidence: (1) could not have been obtained prior to the conclusion of trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted. The test applies with full force to claims arising under Section 9543(a)(2)(vi) of the PCRA. In addition, we have held the proposed new evidence must be producible and admissible.

*Commonwealth v. Small*, 189 A.3d 961, 972 (Pa. 2018) (citations omitted).

Here, the PCRA court applied the above test to Ray's testimony from the evidentiary hearing, which the PCRA court summarized as follows:

> Instantly, Alvino Ray testified essentially in accordance with the affidavit he signed wherein he averred that he did not see [Folly] in the area of the shooting herein on the night [CJ] was killed. He also admitted that he did not witness the murder itself. According to Ray, he was sitting next to William Creighton, [Folly's] co-defendant, when [CJ] and his girlfriend exited a nearby residence. When Creighton saw [CJ], Ray heard Creighton say that he was going to murder [CJ] because he told [CJ] not to come to that neighborhood and that he was going to ambush him on a nearby street. When [CJ] walked away, Creighton left, according to Ray. Shortly thereafter, Ray heard gunshots that prompted him to go inside for his own safety and because he did not want to be considered a suspect by the police. However, he went outside only thirty to forty-five seconds thereafter because he wanted to ascertain whether Creighton had shot [CJ] as Creighton said he was going to do. When he did so, he confirmed that [CJ] had been shot. He also saw Creighton

sitting on some steps. Creighton looked at Ray with what Ray described as a "conniving, devilish look smiling looking me square in the eye smiling." According to Ray, the next day he saw Creighton who confirmed that he had shot [CJ] and also described the shooting to Ray.

Ray added that he knew [Folly] and that he had not seen him that night or during the preceding couple of days. He also indicated that he was unaware that [Folly] had been arrested and charged with murder for the death of [CJ] because at the time [Folly] was arrested, he was away at college. He thereafter moved from Philadelphia to Atlanta, Georgia, and returned to Philadelphia in 2016 or 2017.

Ray returned to Philadelphia in 2016 or 2017 and was taken into custody on the warrants, which ultimately resulted in his incarceration. [Ray indicated that he had numerous criminal contacts in various states. The parties stipulated that Ray pleaded guilty in Georgia to the crimes of identity fraud and making a false statement.] At some point Ray's cousin brought up [Folly's] case and asked Ray if he wanted to "save" someone's life. His cousin eventually told Ray that [Folly] was the person whose "life" he could save but Ray took no action because there were warrants outstanding for his arrest and he did not want to be jailed on those warrants.

Ray first spoke to [Folly's] brother after he was released from prison. Ray also stated that he did not see the face of the [shooting] victim but knew it was [CJ] based on the clothing and the arm of the person he believed was [CJ]. At the time the person he believed was [CJ] was laying entirely in the street between two parked cars, which Ray said he saw from approximately 800 feet away.

On cross-examination, Ray, [who admitted that he was a] trained actor, said he told his cousin about the shooting a couple of days after it occurred. He, however, conceded that he did not witness the shooting himself.

PCRA Court Opinion, 3/6/19, at 4-5 (citations and footnote omitted).

At the conclusion of the evidentiary hearing, the PCRA court denied

Folly's after-discovered evidence claim. In doing so, the trial court recalled

the statements of the various trial witnesses and noted that a jury believed their version that Folly was with Brown and Creighton in a vehicle shortly before [CJ's] murder.  When asked by the PCRA court, Ray confirmed that he was not aware of this version of the event.  *See* N.T., 8/24/18, 78-80.

In its opinion supporting the denial of post-conviction relief, the PCRA court further explained:

> This Court, having carefully listened to the testimony presented by Ray, found his testimony to be wholly lacking in credibility.  First, Ray's version of the incident did not jibe with the evidence recovered following the shooting and that presented a trial.  Ray testified that he heard about four or five shots when in actuality, there were nine total shots.  Ray was also unaware of any of the details of the crime itself, and the testimony presented at trial which included evidence that [Folly], Creighton, and a third male named Tyrone Brown had been driving around that night looking for someone to rob and settled on [CJ].  In addition, his testimony sounded contrived and simply was not believable given the discrepancies in it and the facts presented at trial.
>
> Second, this Court found the testimony not credible because Ray waited so long to come forward.  His decision not to "come clean" until his own legal problems were resolved and his decision to go outside again on the night of the killing so quickly despite his fear of being considered a suspect caused this Court to conclude that he simply was not telling the truth about what occurred that night.
>
> Third, this Court did not believe Ray because he did not witness the shooting.  The entirety of his testimony amounted to pure speculation and was diametrically opposite of the testimony presented at trial.  For this reason and those discussed above, it is respectfully suggested that this Court's order be affirmed for the reasons stated herein.

PCRA Court Opinion, 3/6/19, at 5-6.  Our review of the record supports the PCRA court's conclusions.

In arguing to the contrary, Folly essentially asserts that the PCRA court inappropriately added a credibility determination to the test for after-discovered evidence. We disagree.

Credibility determinations are an integral part of determining whether a PCRA petitioner has presented after-discovered evidence that would entitle him to a new trial. *See*, *e.g.*, *Small*, 189 A.3d at 978-79 (remanding for the PCRA court to make relevant credibility determinations). As this Court has stated, prior to granting a new trial based on after-discovered evidence, "a court must assess whether the alleged after-discovered evidence is of such a nature and character that it would likely compel a different verdict if a new trial is granted. *Commonwealth v. Padillas*, 997 A.2d 356, 365 (Pa. Super. 2010). "In making this determination, a court should consider the integrity of the alleged after-discovered evidence, the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction." *Id.* On appeal, the PCRA court's credibility determinations, if supported by the record, are binding on this Court. *Commonwealth v. Medina*, 92 A.3d 1210, 1214 (Pa. Super. 2014). Here, our review of Ray's testimony supports the PCRA court's conclusion that, for various reasons, it was unworthy of belief. Thus, Folly failed to establish that this evidence entitled him a new trial.

In the alternative, Folly argues that credibility determinations are limited to after-discovered evidence claims that only involve a recantation of trial testimony. *See* Folly's Brief at 4-5. Folly cites no case law to support this

limited interpretation of the after-discovered evidence test. Indeed, we conclude that Pennsylvania precedent holds otherwise.

In **Commonwealth v. Johnson**, 966 A.2d 523 (Pa. 2009), Johnson, who was convicted of first-degree murder and was sentenced to death, filed a PCRA petition in which he raised several claims of trial counsel's ineffectiveness for failing to interview witnesses to the crime, as well as a claim of after-discovered evidence based on a witness's recantation of his trial testimony. The PCRA court held an evidentiary hearing. The new witnesses proffered testimony consistent with the trial witness's recantation. The PCRA court found Johnson proved prejudice based on trial counsel's ineffectiveness, and for that reason, granted Johnson a new trial. Although the PCRA court expressly discredited the trial witness's recantation testimony, the court concluded that it did not need to determine the new witnesses' credibility, because that role was for the jury once Johnson's new trial was held.

The Commonwealth appealed to our Supreme Court and raised numerous claims, including PCRA court error in failing to assess the credibility of the new witnesses proffered by Johnson. According to the Commonwealth, in order to grant a new trial based upon trial counsel's ineffectiveness, "the PCRA court must necessarily find that if the evidence presented at the PCRA hearing had been presented at trial, it would have been found to be credible by the jury and would have resulted in [Johnson's] acquittal." **Johnson**, 966 A.2d at 541 (citation omitted).

In a unanimous decision, our Supreme Court found that "[s]uch a high burden, it seems to us, does not comport" with the **Strickland**[3] prejudice standard for proving ineffectiveness. **Johnson**, 966 A.2d at 541. Rather, the high court stated "[a]fter-discovered evidence cases premised upon recantation testimony are instructive in explicating the credibility assessment." **Id.** Our Supreme cited the **Small** test cited above, and noted that the Court "has remanded after-discovered evidence cases and specifically directed the trial or PCRA court to make credibility determinations on the recantation testimony with an eye to the relevant prejudice standard." **Id.**

The **Johnson** court then discussed several of these cases, and concluded "the after-discovered evidence cases tie the court's credibility determination to the governing prejudice standard." **Id.** at 542. The high court thus vacated the order granting Johnson a new trial and remanded the case so that the PCRA court could properly assess the new witness's credibility.[4] In doing so, our Supreme Court explained:

> In assessing credibility on remand in the case *sub judice*, the question for the PCRA court is not whether the jury in fact would have credited [Johnson's] new evidence[.] Instead, the question is whether the nature and the quality of the evidence is such that the jury would have credited it and rendered a more favorable verdict. That assessment must include a recognition of the impeachability of the

---

[3] **Strickland v. Washington**, 466 U.S. 668 (1984).

[4] The PCRA court also concluded that Johnson received ineffective assistance during the penalty phase of his case. Given its remand, our Supreme Court declined to reach that issue. **Johnson**, 966 A.2d at 543.

> witnesses, and not merely a viewing of their testimony in a most favorable light. ***Some witnesses may display a demeanor***, or be subject to such strong impeachment [] that the court is convinced that no reasonable jury would believe them. On the other hand, some witnesses may conduct themselves, or be of such repute, that the PCRA judge would credit them.

***Johnson***, 966 A.2d at 542 (emphasis added).

Summarizing ***Johnson***, our Supreme Court concluded that the ***Strickland*** prejudice standard for claims of ineffectiveness of counsel aligned with the prejudice standard put forth in the fourth prong of the test for after-discovered evidence, that is that the new witnesses' testimony would "would likely result in a different verdict if a new trial were granted." ***Small***, ***supra***. Therefore, in each situation the PCRA court must considered the credibility of the new evidence proffered when determining if the petitioner established the requisite prejudice before granting post-conviction relief.

Here, the PCRA court found Ray's demeanor to be contrived and combative; the court therefore concluded that no reasonable jury would believe him. We cannot disturb this determination as it is supported by our review of Ray's testimony. ***Medina***, ***supra***. Thus, Folly's claim that he should have been granted a new trial without the PCRA court's determination of credibility fails.

Finally, Folly takes issue with certain statements the PCRA court made in deciding to discredit Ray's testimony, such as the number of gunshots and the fact that Ray did not witness the shooting. ***See*** Folly's Brief at 5-9. We conclude that none of these arguments establishes a basis upon which to

disturb the PCRA court's credibility determination. ***See Commonwealth v. Martin***, 1 A.3d 868, 888 (Pa. 2010) (stating that the factual findings of a PCRA court, "which hears evidence and passes on credibility of witnesses, should be given great deference," especially where "the PCRA court judge also served as the trial court judge").

In sum, our review of the record supports the PCRA court's conclusion that Folly's after-discovered evidence claim failed to meet the ***Small*** criteria, and, therefore, did not warrant the award of a new trial. Thus, we affirm the PCRA court's order denying post-conviction relief.

Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/14/20